1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF WASHINGTON
8

9    DIXIE LYNN AICHELE,                    )
                                            )    No. CV-09-5028-JPH
          Plaintiff,                        )
10                                          )
                                            )
11   v.                                     )    ORDER GRANTING PLAINTIFF'S
                                            )    MOTION FOR SUMMARY
12   MICHAEL J. ASTRUE,                      )    JUDGMENT AND REMANDING FOR
     Commissioner of Social Security,       )    ADDITIONAL PROCEEDINGS
13                                          )    PURSUANT TO SENTENCE FOUR 42
          Defendant.                        )    U.S.C. § 405(g)
14                                          )
                                            )
15                                          )

16   _____

         BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 15.)  Attorney
17
     Thomas Bothwell represents plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents
18
     defendant.   The parties have consented to proceed before a magistrate judge.   (Ct. Rec. 6.)   After
19
     reviewing the administrative record and briefs filed by the parties, the court **DENIES** defendant's Motion
20
     for Summary Judgment, **GRANTS** plaintiff's Motion for Summary Judgment and remands the matter
21
     to the Commissioner for additional proceedings.
22
                                          **JURISDICTION**
23
         Plaintiff Dixie Lynn Aichele (plaintiff) filed for supplemental security income (SSI) on March
24
     13, 2006.  (Tr. 63.)  Plaintiff alleged an onset date of February 2, 2000. (Tr. 63.)  Benefits were denied
25
     initially and on reconsideration.  (Tr. 32, 36.)  Plaintiff requested a hearing before an administrative law
26
     judge (ALJ), which was held before ALJ Hayward C. Reed on July 9, 2008.  (Tr. 302-48.)  Plaintiff was
27
     represented by counsel and testified at the hearing.  (Tr. 320-36, 344-45.)  Medical expert Malcom A.
28
     Braums, M.D., and vocational expert Joseph A. Nuasom also testified.  (Tr. 305-20, 336-43.)   The ALJ

     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-1

denied benefits (Tr. 12-22) and the Appeals Council denied review.  (Tr. 3.)  The matter is now before

this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and

the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 49 years old at the time of the hearing.  (Tr. 320.)  She has a high school education.

(Tr. 320.)  Plaintiff was a homemaker for a number of years, but has work experience as a book binder

and as an apartment cleaner.  (Tr. 320-21.)  Plaintiff testified she stopped working in 1999 due to pain

in her back.  (Tr. 321.)  Plaintiff testified that heavy lifting is hard for her, that she has pain in the middle

of her back, and doing her own dishes is painful.  (Tr. 323, 325.)  She needs to lie down for one-and-a-

half to two hours per day due to pain and drowsiness caused by pain medication.  (Tr. 328.)  Plaintiff said

standing causes her back to hurt, and sitting for a while causes a sharp pain and numbness in her back.

(Tr. 328-29.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42

U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler,*

760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "The

[Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are

supported by substantial evidence."  *Delgado v. Heckler,* 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42

U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan,* 888 F.2d 599,

601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th

Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate

to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch

inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be

upheld.  *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record

as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-2

F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-3

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past.  If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since March 13, 2006, the application date. (Tr. 14.)  At step two, he found Plaintiff has the following severe impairment: herniated disks in the thoracic spine.  (Tr. 14.)  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 15.)  The ALJ then determined:

> [C]laimant has the residual functional capacity to perform less than a full range of light work. The claimant can lift or carry 20 pounds occasionally and frequently lift or carry 10 pounds. She should avoid overhead lifting, but she can lift up to 10 pounds to shoulder level. The claimant can sit for six hours and stand or walk for six hours in an eight-hour workday. She can occasionally climb stairs and ramps, but she should avoid climbing ladders, ropes or scaffolds. She has no limitation for balancing, stooping, kneeling, crouching, or crawling. She has no limitations on handling, fingering, or feeling. There are no visual or communicative limitations. The claimant should avoid heights and hazardous machinery.

(Tr. 15.)    At step four, the ALJ found plaintiff is capable of performing past relevant work as a housekeeper. (Tr. 19.)    After taking into account plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that the plaintiff can perform. (Tr. 20.)    Thus, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, since March 13, 2006, the date the application was filed. (Tr. 22.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) improperly concluded plaintiff's housekeeping work was past relevant work; (2) erred at step five by failing to include all of plaintiff's limitations in the hypothetical to the vocational expert; (3) improperly rejected the opinion of plaintiff's treating physician; and (4) improperly rejected plaintiff's subjective pain complaints. (Ct. Rec. 14 at 9-21.)    Defendant argues the ALJ: (1) properly resolved conflicting medical evidence; (2) properly discredited plaintiff's testimony; (3) made a proper RFC finding; (4) made a proper determination regarding past relevant work; and (5) made a properly supported step five finding. (Ct. Rec. 16 at 4-17.)

## DISCUSSION

**1.    Credibility**

Plaintiff argues the ALJ failed to provide adequate reasons for rejecting plaintiff's subjective complaints. (Ct. Rec. 14 at 16.)    In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.    The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 4416.929.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-5

1    Once medical evidence of an underlying impairment has been shown, medical findings are not

2    required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th

3    Cir. 1991)   If there is evidence of a medically determinable impairment likely to cause an alleged

4    symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons

5    for rejecting a claimant's subjective complaints. *Id.* at 346.   The ALJ may not discredit pain testimony

6    merely because a claimant's reported degree of pain is unsupported by objective medical findings.

7    *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).   The following factors may also be considered: (1)

8    the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between

9    his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and

10   (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's

11   condition.  *Thomas*, 278 F.3d at 958.

12    If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is

13   unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit

14   the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*,

15   169 F.3d 599, 601-02 (9th Cir. 1999).  In the absence of affirmative evidence of malingering, the

16   ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th

17   Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.  The

18   ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what

19   evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

20   2001)(citation omitted).

21    In this case, the ALJ found that plaintiff's medically determinable impairments could

22   reasonably be expected to produce the alleged symptoms, but plaintiff's statements concerning the

23   intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

24   inconsistent with the RFC assessment.  (Tr. 16.)  Plaintiff argues the credibility determination "was

25   based on vague assertions that are not supported by the evidence." (Ct. Rec. 14 at 16.)  To the

26   contrary, the ALJ devoted nearly two full pages of the opinion to the credibility determination and

27   cited a number of reasons for the negative credibility finding.  (Tr. 16-18.)

28    First, the ALJ concluded the objective evidence of plaintiff's back impairment is scant.  (Tr.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-6

16.)  While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2).  The ALJ observed that there are no medical records regarding plaintiff's back impairment before 2004, although the ALJ also noted plaintiff indicated she had not sought treatment sooner due to a lack of medical insurance.  (Tr. 16, 219.)  The ALJ reasoned that plaintiff could have applied for state assistance with medical expenses sooner if her symptoms were significant before April 2004.  (Tr. 16.)  Furthermore, plaintiff's alleged onset date of February 2000 is four years before the first medical record appears.   As noted by the ALJ, it is impossible to objectively verify plaintiff's subjective complaints before April 2004 without medical records.  (Tr. 16.)  This was a reasonable consideration in assessing plaintiff's credibility.

        The ALJ also noted very few limitations are supported by the objective evidence.  (Tr. 16.)  An August 2004 MRI showed a small right paracentral disc herniations at the T7/8 level and somewhat larger paracentral disc herniation at the T8-9.  (Tr. 250.)  One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record. S.S.R. 96-7p.   The ALJ observed that plaintiff reported significant difficulties with her arms and hands, but there is no objective evidence that the claimant's upper extremities are affected by the herniated discs.  (Tr. 15, 310-11, 318.)  In April 2004, plaintiff reported significant pain in the thoracic area, but the pain was non-radiating and there were no neuropathies in the upper extremities.  (Tr. 243.)  In office visits in April, October and December 2004, plaintiff's gait, reflexes and motor strength were normal, indicating plaintiff's lower extremities were not significantly affected.  (Tr. 17, 228, 230, 243.)  The ALJ observed that a February 2005 function report completed by plaintiff indicates daily use of a brace was prescribed, but a 2006 function report does not reference a brace and there are no other references to a back brace in the record.  (Tr. 95, 126.)  Additionally, the ALJ noted a few references to decreased range of motion in the record, which might support some of plaintiff's allegations.  However, the ALJ also observed a number of references to little or no limitation on range of motion.  (Tr. 181, 183, 228, 230, 232, 243, 262.)  The ALJ determined  that the objective evidence supported the limitations included in the RFC.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-7

1    (Tr. 17.)  This was a reasonable conclusion based on the evidence, and the lack of objective evidence

2    is a permissible consideration in the credibility determination.

3           Next, the ALJ pointed out that plaintiff was not compliant with treatment.  (Tr. 17.)

4    Unexplained or inadequately explained failure to follow a prescribed form of treatment is a factor in

5    the credibility determination.    *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).   The ALJ cited

6    an initial physical therapy assessment which noted that plaintiff had signs and symptoms of upper

7    back pain due to disc involvement at levels T7-9, aggravated by poor posture, poor body mechanics

8    and abdominal weakness.  (Tr. 17, 219.)  The physical therapist indicated that compliance with

9    therapy and instructions regarding posture and mechanics, plaintiff should experience a significant

10   decrease of upper back pain.  (Tr. 219.)  Plaintiff attended four therapy sessions between November

11   3, 2004 and December 3, 2004 and was discharged despite the physical therapist's recommendation

12   to continue services.  (Tr. 214-17.)  As noted by the ALJ, plaintiff reported to her treating physician

13   that she discontinued physical therapy due to vaginal bleeding, but vaginal bleeding was not reported

14   until six months after she stopped physical therapy in June 2005.  (Tr. 182, 183.)  She told her

15   treating physician that she intended to return to therapy, but the record does not reflect any additional

16   physical therapy notes.  (Tr. 168-69, 182.)  The ALJ reasonably considered plaintiff's failure to

17   continue or restart recommended physical therapy in making the credibility assessment.

18          Another factor cited by the ALJ in analyzing plaintiff's pain testimony is that her testimony

19   about drowsiness conflicts with the medical record.  In making a credibility evaluation, the ALJ may

20   rely on ordinary techniques of credibility evaluation.  *Smolen*, 80 F.3d at 1284.  Plaintiff testified that

21   her medications cause drowsiness, which is part of the reason she needs to lie down every day for

22   one-and-a-half to two hours.  (Tr. 17, 328.)  However, plaintiff never reported drowsiness or any

23   other side effects from her medication to her treating physician.  In fact, the only mention of fatigue in

24   the record is in April 2004, when plaintiff first established care and before receiving prescriptions for

25   pain medication.  (Tr. 244.)  This inconsistency between the evidence and plaintiff's testimony is an

26   appropriate consideration in determining credibility.

27          The ALJ also mentioned plaintiff's limited work history did not add weight to her allegations

28   concerning her ability to sustain regular and continuing work.  (Tr. 17.)  A claimant's work record is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-8

an appropriate consideration in making a credibility determination. *See Thomas*, 278 F.3d at 958-59. Plaintiff testified she did not work to stay home and raise her children, and either she had a husband who worked or she received welfare when there was no wage earner in the household. (Tr. 330-31.) Her first child was born in 1978 and her last child was born in 1993. (Tr. 330, 335.) She said she started working in 1996 or 1997 when she was required to by the welfare program. (Tr. 332.) The ALJ concluded that the fact that plaintiff never worked until she was required to work under the welfare program raised questions as to whether her current unemployment is truly the result of medical problems. (Tr. 17.) This reasoning is not persuasive, as a mother should not be penalized for lack of work history for years spent raising her children. Indeed, plaintiff still had at least one minor child when the welfare program required her to seek work outside the home. Because other clear and convincing reasons exist to justify the credibility determination, any error by the ALJ in considering plaintiff's lack of work history is harmless. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ mentioned plaintiff's inconsistent statements regarding activities of daily living in the credibility analysis. (Tr. 17.) It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. In February 2005, plaintiff indicated she could prepare simple meals, yet in April 2006, plaintiff indicated she cannot prepare her own meals. (Tr. 91, 122.) The ALJ observed there is no objective evidence that plaintiff's condition worsened between February 2005 and April 2006 which accounts for the change reported by plaintiff, and that plaintiff lives alone with help from her sister only a few nights per week. (Tr. 17, 330.) It was reasonable for the ALJ to infer that plaintiff does prepare at least simple meals, and to consider this inconsistency in plaintiff's reporting in making the credibility determination.

However, the ALJ's other conclusions about plaintiff's activities of daily living ignore evidence in the record. The ALJ concluded plaintiff's other reported activities were consistent with the residual functional capacity determination. In particular, according to the ALJ, the ability to shop for groceries for two hours at a time and perform household chores shows plaintiff can stand and walk for longer periods than alleged, and can lift more than plaintiff alleged. (Tr. 18.) The ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-9

stated that plaintiff "did not give any sign that she needs a break while she is performing household chores" and "can live independently and perform her household chores and grocery shop with very little assistance." (Tr. 18.) However, plaintiff testified that she needs to take breaks while cleaning. (Tr. 325.) Plaintiff also reported in February 2005 that she can't lift pots and pans or stand in front of the stove for more than 30 minutes, that she has a friend carry her laundry and vacuum, and that she can't clean her yard. (Tr. 122-23.) In 2006, plaintiff indicated washing dishes, cleaning, making beds and carrying a laundry basket bring pain. (Tr. 90.) She said she washed clothes but needed help carrying the laundry or lifting anything. (Tr. 91.) Plaintiff reported her daughter, son and son's girlfriend live near her and help her out with housework. (Tr. 92.) Her son's girlfriend makes dinner for her a few times per week. (Tr. 93.) These reports are not consistent with the ALJ's conclusion that plaintiff is performing household tasks with very little assistance. Although the ALJ erred in his conclusion regarding the effects of plaintiff's daily activities on her credibility, the error is harmless because the ALJ cited numerous other acceptable factors in making the credibility finding. *See Carmickle*, 533 F.3d at 1162.

    After noting the foregoing factors tending to undermine plaintiff's credibility, the ALJ more specifically described the reasons he does not find credible plaintiff's assertion of severe pain precluding her from doing any work activity. (Tr. 18.) First, the ALJ concluded the level of pain alleged is not supported by the objective medical records, which, as discussed above, is a permissible consideration. (Tr. 18.) Second, the ALJ observed plaintiff acknowledged she lived alone and received help from her sister only on Saturdays, yet was perform activities of daily living. This reason is rejected as not supported by substantial evidence.

    Third, the ALJ noted that plaintiff testified that she has taken one pain medication from 2005 to present, with no change in the dosage of the medication. The type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms as well is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v). Fourth and similarly, the ALJ pointed out that despite the assertion of alleged ongoing back pain, claimant was never evaluated by an orthopedic doctor. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-10

1    C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v). The ALJ is permitted to consider the claimant's

2    lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th

3    Cir. 2005). Additionally, it is permissible for the ALJ to infer that a plaintiff's failure to seek

4    alternative or more tailored treatment indicates pain is not as all-disabling as alleged. *See Tommasetti*

5    *v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ concluded that plaintiff's acceptance of

6    conservative treatment undermines her allegation of ongoing severe pain. These are permissible

7    considerations, and the ALJ's inferences and conclusions are supported by the evidence.

8        The ALJ discussed the pain evidence with specificity and made reasonable conclusions

9    supported by the evidence. The ALJ properly cited the lack of objective evidence, plaintiff's

10   noncompliance with physical therapy, conflicts between plaintiff's testimony and the medical

11   evidence, plaintiff's inconsistent report about limitations, and the relatively conservative course of

12   treatment accepted by plaintiff. If the ALJ's credibility finding is supported by substantial evidence,

13   the court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. The ALJ considered a

14   number of acceptable factors and, as a result, the ALJ's credibility finding is supported by clear and

15   convincing evidence. Any errors made by the ALJ are harmless.

16   **2.     Dr. Rodriguez**

17       Plaintiff argues the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr.

18   Rodriguez. (Ct. Rec. 14 at 12-16.) Dr. Rodriguez started treating plaintiff in 2004, and completed at

19   least one DSHS Physical Evaluation form almost every year from 2004 to 2008. (Tr. 151-54, 155-59,

20   160-63, 164-67, 176-79, 288-91, 292-95.) In every evaluation except one, Dr. Rodriguez opined

21   plaintiff could perform sedentary work. (Tr. 153, 156, 162, 166, 290, 294.) In August 2005, Dr.

22   Rodriguez opined plaintiff could do light work. (Tr. 178.) Dr. Rodriguez assessed a number of

23   marked limitations due to plaintiff's ruptured thoracic disc, as well as a number of postural

24   limitations. (Tr. 153, 156, 162, 166, 178, 290, 294.) The limitations assessed by Dr. Rodriguez

25   variously included marked interference with sitting, standing, walking, lifting, handling and carrying,

26   and postural limitations on balancing, bending, climbing, crouching, handling, kneeling, pulling,

27   pushing, reaching, sitting and stooping. (Tr. 153, 156, 162, 166, 178, 290, 294.) On May 8, 2008,

28   Dr. Rodriguez also completed a medical questionnaire prepared by plaintiff's representative

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-11

indicating he agreed with a statement that plaintiff's need to lie down for one-and-a-half to two hours every day is reasonable based on her impairments.  (Tr. 254.)

The ALJ gave significant weight to Dr. Rodriguez' opinion.  (Tr. 19.)  The ALJ pointed out that Dr. Rodriguez consistently indicated that plaintiff can work at sedentary or light work.  (Tr. 19, 153, 156, 162, 166, 178, 290, 294.)  The ALJ noted that even if plaintiff is limited to sedentary work, there are jobs available in the national economy plaintiff could perform.  (Tr. 19, 341-42.)  The ALJ found Dr. Rodriguez' opinions are supported by the treatment notes and the MRI results. (Tr. 19.) However, the ALJ gave little weight to Dr. Rodriguez' opinion that plaintiff's stated need to lie down for one-and-a-half to two hours per day is reasonable.  (Tr. 19.)

Plaintiff argues that although the ALJ found Dr. Rodriguez' assessments were supported by the record and gave them significant weight, the ALJ did not incorporate all of the limitations identified by Dr. Rodriguez in the RFC.  (Ct. Rec. 14 at 12-13.)  Plaintiff further argues the ALJ failed to explain why he rejected those limitations.  (Ct. Rec. 14 at 12.)

In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining  physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion.  *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  However, the opinion

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-12

of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

In this case, despite giving significant weight to the evaluations prepared by Dr. Rodriguez, the ALJ adopted the limitations assessed by the medical expert, Dr. Braums. (Tr. 18.) The ALJ did not explain why Dr. Braums' opinion that plaintiff could do light work with limitations was more persuasive than Dr. Rodriguez' opinion that plaintiff could do sedentary work. As discussed above, the ALJ must provide specific, legitimate reasons supported by substantial evidence in adopting the opinion of a medical advisor over the opinion of a treating physician. Because the ALJ failed to do so, the ALJ erred.

The ALJ mentioned that "even if the claimant were limited to sedentary work, there would still be a significant number of jobs the claimant could perform." (Tr. 19.) The vocational expert testified that jobs are available to a person limited to sedentary work and occasional climbing, balancing, stooping, kneeling, crouching and crawling. (Tr. 341-42.) Thus, to the extent the ALJ included the appropriate limitations in the hypothetical, the finding of light work verses sedentary work is not essential to the final disability determination. In that case, any error made by the ALJ in including light work in the RFC instead of sedentary work is harmless.

Notwithstanding, the findings with regard to postural limitations are essential to the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-13

determination of disability. The vocational expert also testified that with the same hypothetical, limitations on handling, reaching, and pulling "would pretty much eliminate any job."[1] (Tr. 343.) These are all limitations identified by Dr. Rodriguez on every DSHS evaluation form he completed. The ALJ's decision does not address or mention the limitations identified by Dr. Rodriguez. The ALJ's discussion of Dr. Rodriguez' opinion focuses entirely on the doctor's conclusions that plaintiff could perform sedentary, or in one instance, light work. It is not clear whether the ALJ considered and rejected the limitations identified by Dr. Rodriguez, or whether he considered them subsumed in the conclusion that plaintiff could perform light or sedentary work. The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The limitations assessed by Dr. Rodriguez, a treating physician, are indeed probative evidence. The ALJ should have discussed the resolution of those limitations, and because the ALJ did not do so, the ALJ erred.

However, the court does not agree with plaintiff that the ALJ improperly rejected Dr. Rodriguez' opinion that plaintiff needs to lie down for a significant period of time every day. The ALJ cited specific, legitimate reasons supported by substantial evidence in rejecting that limitation. The first reason noted by the ALJ in rejecting Dr. Rodriguez's statement about plaintiff's need to lie down daily is an inconsistency between this assertion and the ability to work at a light or sedentary level. (Tr. 19.) A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. The ALJ pointed out there is no evidence that plaintiff's condition had worsened since Dr. Rodriguez last indicated plaintiff was capable of sedentary work, and the need to lie down as often as plaintiff claims is inconsistent with sedentary work.[2] This is a

---

[1]The vocational expert also mentioned a limitation on "touching" as a factor eliminating any job; however, a limitation on touching was not included in any hypothetical. (Tr. 343.)

[2]The ALJ referenced the April 28, 2007 DSHS evaluation form completed by Dr. Rodriguez, as it was the last evaluation in the record at the time of the decision. (Tr. 19, 288-91.) The April 28, 2008 DSHS evaluation form completed by Dr. Rodriguez was made part of the record by the Appeals Council

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-14

reasonable inference based on the evidence and constitutes a specific, legitimate reason for rejecting that portion of Dr. Rodriguez' opinion.

Secondly, the ALJ indicated Dr. Rodriguez's conclusion about plaintiff's need to lie down appears to be based on plaintiff's subjective reports. (Tr. 19.)  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);  *Fair*, 885 F.2d at 604.  As detailed above, the ALJ made a credibility finding based on clear and convincing evidence.  Furthermore, there is no evidence in the medical record that plaintiff reported the need to lie down to Dr. Rodriguez, nor are there any notes reflecting Dr. Rodriguez suggested or recommended such rest.    This is therefore a specific, legitimate reason for rejecting Dr. Rodriguez's opinion.

Lastly, the ALJ commented on possible motivations which may have caused Dr. Rodriguez to agree with plaintiff's stated need to lie down for one-and-a-half to two hours per day . (Tr. 19)  The ALJ suggested that Dr. Rodriguez may have been influenced to agree with the statement because plaintiff "expressed her dissatisfaction with his opinion." (Tr. 19.)  The ALJ's comments are largely speculative, although they are not completely without basis in the record since plaintiff admitted she spoke to a nurse in Dr. Rodriguez' office to indicate that she did not agree that she had the capability to work as the doctor indicated on the DSHS forms.  (Tr. 333-34.)  However, there is no evidence that this complaint was reviewed by Dr. Rodriguez or that it influenced his opinion.  Although an ALJ may make reasonable inferences from the evidence, plaintiff's complaints to a nurse do not constitute substantial evidence that Dr.  Rodriguez' opinion was colored by those complaints.  *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (stating ALJ's "may not assume doctors routinely lie in order to help their patients collect disability benefits").  Therefore, the ALJ erred in asserting Dr. Rodriguez' opinion was influenced by an effort to assist or appease the plaintiff.  However, the error is harmless because ALJ cited other specific, legitimate reasons supported by the substantial evidence justifying rejection of Dr. Rodriguez' opinion about plaintiff's need to lie down.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*,

and was not considered by the ALJ.  (Tr. 6, 292-95.)  However, it is noted that the 2008 evaluation also indicates plaintiff's work level is sedentary.  (Tr. 294.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-15

454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

**3.      Past Relevant Work**

Plaintiff also argues the ALJ erred in determining her past work as a housekeeper is "past relevant work." Past relevant work is work that was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a), 416.965(a). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a). However, if average monthly earnings are less than the amount described in the regulations, it is presumed that a claimant has not engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(3); 404.974(b)(3). For work from 1996 to 1998, monthly earnings of $500 constitute substantial gainful activity under the regulations. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2).

Plaintiff reported working two days per week, two-and-a-half hours per day. (Tr. 111.) Earnings records reflect plaintiff earned $206 in 1996 and $2,090 in 1997. (Tr. 60.) No earnings were reported for housekeeping work in 1998. (Tr. 61.) Plaintiff's average earnings in 1997 were $174 per month, less than "substantial earnings" under the regulations. Thus, it is presumed that plaintiff's work as a housekeeper is not substantial gainful activity. Defendant cites *Lewis v. Apfel* for the proposition that earnings can be a presumptive, but not conclusive sign of whether a job is substantial gainful activity. 236 F.3d 503, 515 (9th Cir. 2001). However, *Lewis* also states:

> The presumption that arises from low earnings shifts the step-four burden of proof from the claimant to the Commissioner. Without the presumption, the claimant must produce evidence that he or she has not engaged in substantial gainful activity; if there is no such evidence, the ALJ may find that the claimant has engaged in such work. With the presumption, the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity.

*Id.* Thus, plaintiff's earnings record establishes a presumption of no substantial gainful activity from housekeeping. The ALJ pointed to no evidence indicating that plaintiff has engaged in substantial

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-16

gainful activity.  Thus, plaintiff met her burden and the ALJ erred in determining plaintiff has past

relevant work as a housekeeper.  The step four finding is therefore also erroneous. The ALJ made an

alternative finding at step five, which in some instances would cause an error at step four to be moot.

However, in this case, the ALJ's RFC and ultimate step five finding is also suspect due to the ALJ's

error in evaluating the medical evidence.

**4.     Remedy**

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the

opinions of a treating or examining physician.  The general rule, found in the *Lester* line of cases, is

that "we credit that opinion as a matter of law."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996);

*Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

1989).  Another approach is found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), which holds

a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for

disregarding the opinion.  *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has

flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other

issues).  Where evidence has been identified that may be a basis for a finding, but the findings are not

articulated, remand is the proper disposition.  *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990)

(citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).  In this case, there is

evidence which may be a basis for finding that Dr. Rodriguez' limitations should not be adopted.

Thus, remand is the proper remedy.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence and free of legal error.  On

remand, the ALJ will reevaluate the opinion of Dr. Rodriguez and address the limitations identified in

his reports.  The ALJ will also make a new finding at step four and, if necessary, a new RFC

determination and step five finding.  The ALJ may receive additional evidence from a medical expert

or any other medical evidence necessary to the decision.

Accordingly,

**IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED**.  The matter is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-17

1    remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C.

2    405(g).

3        2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 15 )** is **DENIED**.

4        3.    An application for attorney fees may be filed by separate motion.

5        The District Court Executive is directed to file this Order and provide a copy to counsel for

6    plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

7    DATED April 27, 2010.

8

9                    S/ JAMES P. HUTTON
                UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT-18